**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DANA TURNER,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | |
| **VALENTINO USA, INC. and** ) | |
| **KATIE DOW, in her individual** ) | **JURY TRIAL REQUESTED** |
| **capacity,** ) | |
| ) | |
| *Defendants.* ) | |

## COMPLAINT FOR DAMAGES

Plaintiff, DANA TURNER, files this Complaint against Defendants VALENTINO USA and KATIE DOW, and brings claims pursuant to 42 U.S.C. 1981, which entitles Ms. Turner to be free from racial discrimination and retaliation regarding compensation, terms, conditions, and privileges of employment.

## INTRODUCTION

In 2018, Ms. Dana Turner brought her expertise and notable selling skills to Valentino to grow her successfully tracked sales career in luxury apparel. Unbeknownst to Ms. Turner, Valentino would halt her blossoming career through acts of racial discrimination and retaliation in the workplace. Turner did not fathom that a prestigious brand such as Valentino would allow their staff to spew

racially discriminatory behavior against a top seller such as Ms. Turner. Ms. Turner was unjustifiably punished by being overlooked and not considered for a well-earned promotion. For three years, Ms. Turner has been discriminated against, yet she is till the top seller in the Valentino boutique and consistently meets her sales goals. As a top seller at every luxury store Ms. Turner has worked at, she confided in Valentino with the growth of her career.

At the hands of Valentino's store manager, Ms. Katie Dow, Valentino has vicariously committed acts of race discrimination towards Ms. Turner. These acts of discrimination have led to the stagnation of Ms. Turner's career. Turner is being held back from any growth that was promised. Ms. Turner left her previous employment under the guise that Valentino would offer more room to grow and more promotional or pay raise opportunities, which are rightfully due to someone with an outstanding sales record. Ms. Turner's top earning skills are well known in the Phipps Plaza, where her Valentino branch is located, due to her previous employment in other luxury stores in the mall.

Ms. Turner began working with Valentino in 2018. To this day, Ms. Turner is a top earner at Valentino and has been the predominant financial goal earner for the boutique. However, Ms. Turner remains in the same position since 2018 and has been completely skipped over for promotions by Valentino. In the fall of 2020,

more egregious discriminatory acts by Ms. Katie Dow towards Turner became apparent.

Ms. Turner has done her due diligence by submitting dozens of complaints, emails, and face-to face attempts at conversation with the Valentino Human Resource department and by trying to communicate directly to Ms. Dow about the discriminatory acts. Ms. Turner's pleas go unheard, and no action is taken in response to her complaints. At this point, it is futile for Valentino to have an HR department since they do not seem to take race discrimination violations seriously. The name and goodwill of a prestigious brand such as Valentino are left in the hands of covert racist management to destroy. Valentino may permit such despicable behavior to continue but we will not permit our client's promising career to sit stagnant in the hands of such atrocious discrimination.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper as this Court has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. §§ 1331, as well as 42 U.S.C. 1981.

2.

Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Ms. Turner's claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

**PARTIES**

3.

**Plaintiff, Dana Turner,** is an African American adult female employed by Defendant Valentino USA. At all times relevant to this Complaint, Ms. Turner was a citizen of the United States and a resident of Georgia. At all times relevant to this Complaint, Ms. Turner had clearly established legal rights under state and federal law and the United States Constitution, such as the right to be free from discrimination and to enjoy equal protection of the laws of this country. Ms. Turner submits herself to the jurisdiction and venue of this Court and is entitled to bring this action under state and federal law for all general, special, and any other permissible damages.

4.

**Defendant, Valentino USA ("Valentino")**, at all times relevant, was a corporation organized and existing under the laws of the state of Delaware with

its principal place of business at 11 W. 42nd Street, New York, NY 10036-8002. At all times relevant, Defendant Valentino was operating business in the state of Georgia and is subject to the jurisdiction of this Court.

5.

**Defendant, Katie Dow**, at all times relevant, was a Caucasian adult female employed by Defendant Valentino USA as Store Manager. At all times relevant to this Complaint, Ms. Dow was a citizen of the United States and a resident of Georgia. At all times relevant, Ms. Dow was prohibited by clearly established state and federal law and the United States Constitution from discriminating against Ms. Turner on the basis of race.

## STATEMENT OF FACTS

**I.   Ms. Turner's relevant work history**

6.

Ms. Turner was born in Georgia, aged 37, and attended high school at South West Dekalb High School. After high school, Ms. Turner attended college and then began her fashion career.

7.

Ms. Turner began working at Dillards and moved to a mid-tier luxury brand, Dianne Von Furstenberg ("DVF"), where she quickly became a top seller.

8.

Because of her quick rise to top seller at DVF, a top luxury brand in Phipps Plaza, Bottega Veneta recruited her, and there, she quickly again became top seller.

9.

Ms. Turner stayed at Bottega Veneta for four years and was the top seller for her last three years.

10.

Ms. Turner moved over to her current employer, Valentino, in the Phipps Plaza in July 2018.

## II.   Valentino and its all-Caucasian management staff at the time of Ms. Turner's employment

11.

At the time Ms. Turner began working at the Valentino USA in July 2018, the company had one store manager who was a Caucasian female (Defendant Katie Dow); one selling supervisor, who was a Caucasian female; and Ms. Turner, the only African American.

12.

Upon information and belief, to date, no African American has ever held a supervisory or management position, and based on information and belief, has never been considered for such a position.

### III.    Ms. Turner quickly establishes herself a top performer at Valentino

13.

Within one year of her employment with Valentino, around April 2019, Ms. Turner became Valentino's top seller, continuing her long history of being top seller wherever she landed within the luxury retail sales industry.

14.

During her rise to top seller at Valentino, Ms. Turner opened and closed the store; handled the majority of opening and closing paperwork; handled the majority of client and sales issues; demonstrated above-average understanding of sales performance indicators such as KPI and UPTs; trained new associates and closed out sales for associates.

15.

Notably, Ms. Turner's ability to perform exceptionally at these tasks came as no surprise to Defendant Dow, because Defendant Dow knew, as the store manager at the time Ms. Turner began working with Valentino, that Ms. Turner was the senior selling supervisor at Bottega Veneta prior to immediately coming over to Valentino.

**IV.    In August 2019, the selling supervisor position is filled without Ms. Turner's knowledge of such an opening and without an opportunity for her to apply**

16.

In August 2019, over a year after Ms. Turner began employment with Valentino and months past Ms. Turner becoming Valentino's top seller, Valentino filled a position for selling supervisor.

17.

Prior to the selling supervisor position being filled in August 2019, no one informed Ms. Turner that the position was open, despite the fact that during the preceding months, the only people working in the store were Ms. Turner and Defendant Dow, and during this same time period, Ms. Turner was doing a lot of the job tasks for which Ms. Dow was responsible.

18.

Prior to the selling supervisor position being filled in August 2019, Ms. Turner had never received a negative performance review, either in writing or verbally.

19.

Nevertheless, and again, Ms. Dow, never—not once—informed Ms. Turner of the position opening, which also means Ms. Turner was never interviewed for

the position and was never asked or provided opportunity to apply for the position.

20.

Prior to the time of the selling supervisor was filled in August 2019, upon information and belief, the job was not posted on a corporate internal site of Valentino or anywhere else.

21.

Ms. Turner would have applied for the selling supervisor position had she been aware of the opening.

22.

The person who filled the position is Caucasian, non-African American. She was never a selling supervisor of luxury brand goods and in fact, came over to Valentino from selling makeup.

23.

Obviously, Ms. Turner could not inquire about filling a position she did not know was available; however, prior to the subject selling supervisor position being filled, Ms. Turner asked Defendant Dow about job advancement. Defendant Dow never got back to Ms. Turner about any opportunities while knowing she was hiring a selling supervisor in the store and while knowing Ms. Turner was

performing a lot of Ms. Dow's job tasks as store manager.

24.

Attached to this Complaint, is an affidavit from the non-African-American person who filled the subject selling supervisor position in August 2019. In this affidavit, this person states that after getting to know Ms. Turner, she was surprised that Ms. Turner did not get the selling supervisor position because Ms. Turner was obviously more qualified than she was for the position; that same person also stated that after getting to know Defendant Dow, she personally concluded that Ms. Turner did not get the position because of Defendant Dow's racial biases against African-Americans. (See Ex. 1.)

25.

To this day, despite holding the rank of top sales associate for the entire time she has been at Valentino, Ms. Turner has never received a pay raise or been approached about a pay raise.

## V. Ms. Dow stereotyped Valentino's African Americans employees, including Ms. Turner, as criminals

26.

In September 2019, a product package was ordered and shipped for the Valentino Store where Ms. Turner and Ms. Dow worked; the package went

missing.

27.

Ms. Dow began investigating the missing package by reviewing the store video to determine whether Ms. Turner stole the package. It became crystal clear through the video that Ms. Turner, nor the other black associate, stole the package.

28.

Nevertheless, Defendant Dow, with no evidence at all, stated to the person whose affidavit is attached, that she believed Ms. Turner and the other black male associate are involved in a criminal theft ring.

29.

Ms. Dow never accused the Caucasian, non-African-American selling supervisor (the person who swore to the attached affidavit) of being a part of this so-called criminal theft ring.

30.

Ms. Dow's false accusation is so wild and crazy, and slanderous, with no supporting evidence. This type of utterly irrational criminal accusations of African Americans can only lead African Americans to think about race especially when, within Valentino, no black people advance to management; no black people get raises; and request for opportunities for job advancement go ignored despite being

the top sales performer and having done much of the store manager's job task.

## VI.    Ms. Turner repeatedly reports racial discrimination by Ms. Dow to Human Resources and no action is taken

31.

On November 10, 2020, Ms. Turner made formal complaint to Valentino's Human Resources department regarding discrimination by Ms. Dow.

32.

Two days later, on November 12, 2020, Ms. Turner sent Ms. Makhijani of Valentino Human Resources a follow-up email about Ms. Dow's discriminatory actions towards Ms. Turner. Ms. Turner inquired about how the investigation would go, what would take place, if her confidentiality would be ensured, and if interim protection from corporate would be needed. **Ms. Makhijani, nor anyone else, ever responded.**

## VII.    COVID-19 hits Atlanta and Ms. Turner is treated differently than her coworkers.

33.

The Phipps Plaza location of Valentino closed, intermittently, due to COVID-19 from November 13, 2020 through November 26, 2020.

34.

On November 27, 2020, Ms. Makhijani and Ms. Dow requested that Ms. Turner return to work on November 27, 2020, alone. No coworkers were required to

return to work with Ms. Turner on November 27, 2020 nor for the next five days.

35.

On November 27, 2020, Ms. Turner's first day back to work, with no selling supervisor, sales manager, or any other Valentino staff present, a man purchased Valentino products inside the store, from Ms. Turner, with a digital credit card on his phone; the credit card came from a digital wallet and had his full name and card number, in addition to the Wells Fargo insignias.

36.

Relevantly, in 2021, with Apple Pay (and other payment methods) that simply use stored credit card information on a phone, the man presenting the digital credit card presented nothing unusual.

37.

On November 28, 2020, Ms. Makhijani determined that the man had purchased the Valentino products fraudulently.

38.

At this time (From November 202 through the majority of January 2021), no disciplinary action was taken against Ms. Turner for accepting a digitally-stored credit card.

## VIII. Ms. Turner continues to report discriminatory behaviors taken against her by Ms. Dow and again, no action is taken by Valentino or Human Resources

39.

Following her initial complaint in November 2020 (to which Ms. Turner received no response), Ms. Turner continued to report Ms. Dow's discriminatory behavior towards her, such as:

1. Emailing Ms. Makhijani regarding continued concerns about Ms. Dow's behavior;
2. Calling Ms. Makhijani, explaining retaliatory conduct surrounding a Special Event, including Ms. Dow being drunk at the event, and informing Ms. Makhijani that she again advised Ms. Dow she felt racially discriminated against;
3. Providing proof to Ms. Makhijani about more retaliatory conduct such as receipts and texts from Ms. Turner's client, regarding Ms. Dow making Ms. Turner's clients, and Ms. Turner's clients only, go through unnecessary hoops & bounds for simple exchange procedures; and
4. Informing Ms. Makhijani that entire Valentino Atlanta staff were being allowed two consecutive days off, whereas Ms. Turner's days were separated all over the week—**despite full knowledge by Ms. Dow and everyone that Ms. Turner has two special needs children** who require additional childrearing accommodations. In that same email, Ms. Turner also mentioned that she had zero business cards and her uniforms were oversized – both issues that Ms. Dow has repeatedly refused to rectify.

40.

No action is taken to investigate Ms. Turner's complaints by Ms. Makhijani, or anyone from Valentino.

IX.   **As Ms. Turner's complaints stack up against Ms. Dow, Valentino retaliates**

41.

Suddenly, after all of Ms. Turner's verifiable complaints of racial discrimination and retaliation by Ms. Dow, on January 22, 2021 –almost a full two months after the transaction with the digitally stored credit card was deemed fraudulent by Ms. Makhijani in November 2020--Ms. Turner was issued a "formal warning" for the transaction.

42.

Upon information and belief, after receiving a "formal warning," Ms. Turner was not eligible to request nor receive a promotion or bonus pay for one year from the date the warning was issued.

43.

Ms. Makhijani and Valentino took the position that Ms. Turner violated policy with respect to the fraudulent transaction by accepting a digitally-stored credit card – however, it does not take two months to issue a formal warning when Ms. Makhijani knew about the transaction the day after the transaction and deemed it fraudulent then.

44.

The "formal warning" was issued to Ms. Turner in retaliation for her continued

complaints of discrimination and retaliation by Ms. Dow.

45.

Ms. Turner did not sign the "formal warning."

X.   **Ms. Turner's lawyer places Valentino on notice of an upcoming lawsuit, launching Valentino to retaliate further against Ms. Turner**

46.

On the morning of April 9, 2021, at approximately 9:24 am, Ms. Turner's lawyer sent notice of an upcoming lawsuit against Ms. Makhijani for the discriminatory conduct and retaliation described within this complaint.

47.

Ms. Turner had a "check in" scheduled with Ms. Makhijani for April 9, 2021 at 10 AM.

48.

Immediately after Ms. Turner's lawyer sent the email on April 9, 2021, Ms. Turner was informed that her "check in" would be delayed.

49.

Ms. Turner's check in did not take place until approximately 6 p.m. on April 9, 2021, hours after it was scheduled for.

50.

During the delayed "check in" on April 9, 2021, and on the day Ms. Turner's lawyer had previously sent notice to Valentino, and after Ms. Turner had been repeatedly reporting racial discrimination and no action was taken -- Ms. Makhijani informed Ms. Turner that the fraudulent transaction incident from November 2020 had escalated to such a degree that Valentino was required to take more disciplinary action against Ms. Turner.

**COUNT I**
**DISCRIMINATION BASED ON RACE IN VIOLATION OF**
**42 U.S.C. § 1981**
(*Against Valentino USA and Dow*)

51.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-50, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

52.

Based on the facts incorporated to support this Count, Valentino and Defendant Dow engaged in race discrimination including disparate treatment against Ms. Turner because of her race, in direct violation of 42 U.S.C. § 1981, by intentionally excluding her from consideration for the selling supervisor position

(e.g., failure to promote), because of her race--despite her ranking as the top selling supervisor, and being well more qualified than the non-African-American person who got the selling supervisor job in question. Further, the facts used to support this Count I demonstrate discrimination/retaliation by disciplining Ms. Turner in a manner that affects her ability to get a bonus and by excluding her from benefits allotted to other employees such as two consecutive days off, a fact that Defendants knew would affect her ability to attend to her children effectively, along with interfering with her client transactions which affected her ability to make money, and never considering or offering a pay raise or other promotion even for the currently, open position.

## COUNT II
## RETALIATION/DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981
## BASED ON OPPOSING RACIAL DISCRIMINATOION
*(Against Valentino USA and Ms. Dow)*

### 53.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-50, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

### 54.

Based on the facts and assertions incorporated to support this Count, Defendants Valentino and Ms. Dow have retaliated against Ms. Turner in direct

violation of 42 U.S.C. § 1981, in the form of disciplining Ms. Turner in a manner that affects her ability to get a bonus because per company policy Ms. Turner cannot request a promotion or receive a bonus from the date of the formal warning (upon information and belief), and also by excluding her from benefits allotted to other employees such as two consecutive days off, a fact that Defendants knew would affect her ability to attend to her children effectively, along with interfering with her client transactions which affected her ability to make money, and never considering or offering a pay raise or other promotion even for the currently, open position—based on the facts incorporated to support this Count II.

**COUNT III**
**PUNITIVE DAMAGES**
*(Against Valentino USA and Dow)*

55.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-26 and any other paragraphs this court deems relevant. The actions of Defendants were willful, wanton, and demonstrated an entire want of care which raises the presumption of conscious indifference to consequences. Consequently, Ms. Turner is entitled to punitive damages to punish, penalize, and deter Defendants from similar conduct in the future.

## COUNT IV
## ATTORNEY FEES

56.

Plaintiff is entitled to attorney fees under all applicable laws based on the facts within this Complaint.

## CONCLUSION

**WHEREFORE**, Plaintiff prays for a trial by jury of twelve and judgment against Defendant as follows:

(a) That process issue and service-be-had on Defendants;

(b) That Plaintiff recover all costs of this litigation;

(c) That Plaintiff receives all permissible damages under law, including punitive damages, compensatory damages, and special damages.

(d) That a jury trial be had on all issues so triable;

(e) And that Plaintiff receives such other and further relief as the Court deems just and proper, including any injunctive relief this Court deems proper.

Respectfully submitted this 27th day of April 2021,

/s/ MARIO WILLIAMS
Mario B. Williams (Ga # 235254)

**NDH LLC**
44 Broad Street NW, Suite 200
Atlanta, GA 30303

(404) 254-0442/(404) 935-9391 FAX
mwilliams@ndh-law.com
*Counsel for Plaintiff Dana Turner*